[No. A097679. First Dist., Div. One. May 1, 2002.]

MARCUS W., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Marc J. Zilversmit for Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, and Ann P. Wathen, Deputy Attorney General, for Real Party in Interest.

**OPINION**

**MARCHIANO, P. J.**—By timely petition (*Ramona R. v. Superior Court* (1985) 37 Cal.3d 802, 804, fn. 1 [210 Cal.Rptr. 204, 693 P.2d 789]; Cal.

Rules of Court, rule 1483 (j)), Marcus W. seeks a writ of mandate to reverse an order of the juvenile court finding that he is "not a fit and proper subject to be dealt with under the juvenile court law" (Welf. & Inst. Code, § 707, subd. (c))[1] and transferring the case to criminal court. (§§ 707.01, subd. (a)(3)(B), 707.1, subd. (a).)[2] Among his challenges to the order, Marcus contends that the court improperly relied on his confession of involvement to police to find a prima facie case that at age 15 he committed the charged offense of murder, without holding a hearing to determine whether his statements were involuntary and coerced. Consequently, Marcus bore the burden to prove that he was amenable to treatment as a juvenile under all of the criteria enumerated in section 707, subdivision (c).[3] The juvenile court found him unfit under only one—the circumstances and gravity of the offense—proved solely by his admissions to police.

We hold that where, as here, incriminatory statements are offered to establish a prima facie case that a minor committed an offense triggering the presumption of unfitness (§ 707, subds. (b) & (c)), the minor may move to exclude them. Thereafter, the juvenile court must hold a hearing and rule on the admissibility of the statements. (Evid. Code, §§ 400-402; *In re Juma P.*

---

[1] Unless otherwise noted, further statutory references are to the Welfare and Institutions Code.

[2] "The juvenile court and the criminal court are divisions of the superior court, which has subject matter jurisdiction over criminal matters and civil matters, including juvenile proceedings. (See Cal. Const., art. VI, § 10.) When exercising the jurisdiction conferred by the juvenile court law, the superior court is designated as the juvenile court. (Welf. & Inst. Code, § 245.) Accordingly, when we refer herein to the jurisdiction of the juvenile court or the jurisdiction of the criminal court, we do not refer to subject matter jurisdiction, but rather to the statutory authority of the particular division of the superior court, in a given case, to proceed under the juvenile court law or the law generally applicable in criminal actions . . . ." (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548, fn. 3 [117 Cal.Rptr.2d 168, 41 P.3d 3] (*Manduley*).)

[3] As relevant here, section 707, subdivision (c) provides: "With regard to a minor alleged to be a person described in Section 602 by reason of the violation, when he . . . was 14 years of age or older, of any of the offenses listed in subdivision (b), upon motion of the petitioner made prior to the attachment of jeopardy the court shall cause the probation officer to investigate and submit a report on the behavioral patterns and social history of the minor being considered for a determination of unfitness. Following submission and consideration of the report, and of any other relevant evidence which the petitioner or the minor may wish to submit the minor shall be presumed to be not a fit and proper subject to be dealt with under the juvenile court law unless the juvenile court concludes, based upon evidence, which evidence may be of extenuating or mitigating° circumstances, that the minor would be amendable to the care, treatment, and training program available through the facilities of the juvenile court based upon an evaluation of each of the following criteria: [¶] (1) The degree of criminal sophistication exhibited by the minor. [¶] (2) Whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction. [¶] (3) The minor's previous delinquent history. [¶] (4) Success of previous attempts by the juvenile court to rehabilitate the minor. [¶] (5) The circumstances and gravity of the offenses alleged in the petition to have been committed by the minor."

(1988) 204 Cal.App.3d 1228, 1236 [251 Cal.Rptr. 739].) Accordingly, we issue our peremptory writ.

## I. Applicable Law

Our Supreme Court has recently summarized the statutory procedures governing our analysis. "[A]ny individual less than 18 years of age who violates the criminal law comes within the jurisdiction of the juvenile court, which may adjudge such an individual a ward of the court. (§ 602, subd. (a).) A minor accused of a crime is subject to the juvenile court system, rather than the criminal court system, unless the minor is determined to be unfit for treatment under the juvenile court law or is accused of certain serious crimes. For example, when a petition is filed alleging that a minor 16 years of age or older has violated the criminal law and should be adjudged a ward of the juvenile court, the minor generally is subject to the juvenile court law unless the court concludes, upon the motion of the prosecutor and after an investigation and report by a probation officer, that the minor would not be amenable to the care, treatment, and training program available through the facilities of the juvenile court. (§ 707, subd. (a)(1).) In assessing the minor's fitness for treatment under the juvenile court law, the court considers the minor's degree of criminal sophistication, whether the minor can be rehabilitated prior to the expiration of the juvenile court's jurisdiction, the minor's previous delinquent history, the success of previous attempts by the juvenile court to rehabilitate the minor, and the circumstances and gravity of the alleged offense. (*Ibid.*)

"A minor 14 years of age or older who is alleged to have committed one of the serious crimes specified in section 707, subdivision (b)—such as murder, robbery, or assault with a firearm—is presumed not to be a fit and proper subject for treatment under the juvenile court law. (§ 707, subds. (b) & (c).) At the juvenile court hearing to determine the question of fitness for treatment, a minor accused of such a crime has the burden of rebutting this presumption of unfitness by a preponderance of the evidence. (Cal. Rules of Court, rule 1483(a).) If a minor is declared not to be a fit and proper subject for treatment under the juvenile court law in accordance with the foregoing statutes, the district attorney may file an accusatory pleading against the minor in a court of criminal jurisdiction, and the case then proceeds according to the laws applicable to a criminal proceeding. (§ 707.1, subd. (a).)" (*Manduley, supra,* 27 Cal.4th 537, 548-549, fn. omitted.)[4]

■ For specified crimes committed by minors 14 years of age or older, including those alleged here, the juvenile court law also affords the prosecutor the discretion to file directly in criminal court. (§ 707, subd. (d).) Here,

---

[4]*Manduley, supra,* 27 Cal.4th 537 rejected constitutional challenges to Proposition 21, an initiative measure approved by the voters March 7, 2000.

however, the prosecutor elected to proceed initially in juvenile court. Therefore, under the legislative scheme, the determination whether Marcus was unfit was a judicial function. (*Manduley, supra,* 27 Cal.4th 537, 555, 560; *Edsel P. v. Superior Court* (1985) 165 Cal.App.3d 763, 786 [211 Cal.Rptr. 869].)

██   It is now well settled that a minor adjudicated in the juvenile court system has the right to notice of the charges against him, to counsel, to confront and cross-examine witnesses, and to the privilege against self-incrimination. (*In re Gault* (1967) 387 U.S. 1 [87 S.Ct. 1428, 18 L.Ed.2d 527]; *Edsel P. v. Superior Court, supra,* 165 Cal.App.3d 763, 775, fn. 5.) Moreover, although a minor such as Marcus has no fundamental constitutional right to trial in juvenile court (*Manduley, supra,* 27 Cal.4th 537, 564; *Hicks v. Superior Court* (1995) 36 Cal.App.4th 1649, 1658 [43 Cal.Rptr.2d 269]), "where a statute confers a right to a *judicial* determination of fitness for a juvenile court disposition, the due process clause requires that the determination be made in compliance with the basic procedural protections afforded to similar judicial determinations." (*Manduley, supra,* 27 Cal.4th 537, 566; *Kent v. United States* (1966) 383 U.S. 541 [86 S.Ct. 1045, 16 L.Ed.2d 84]; *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 718 [135 Cal.Rptr. 392, 557 P.2d 976].) Although "[t]he result of a fitness hearing is not a final adjudication of guilt . . . the certification of a juvenile offender to an adult court has been accurately characterized as 'the worst punishment the juvenile system is empowered to inflict.' " (*Ramona R. v. Superior Court, supra,* 37 Cal.3d 802, 810.)

██   A minor charged with a crime triggering the presumption of unfitness may require the prosecutor to establish a prima facie case. (*Edsel P. v. Superior Court, supra,* 165 Cal.App.3d 763, 786-787.) " '[T]he prima facie case' amounts to 'sufficient cause' within the meaning of Penal Code sections 871 and 872. 'That phrase is generally equivalent to "reasonable and probable cause" which has been defined as such a state of facts as would lead a man of ordinary caution and prudence to believe and conscientiously entertain a strong suspicion of the guilt of the accused. . . .' " (*Id.* at p. 780, fn. 10, citations omitted.)

The prima facie hearing may be consolidated with the fitness hearing itself. (*Edsel P. v. Superior Court, supra,* 165 Cal.App.3d at p. 787.) The prosecutor may use written probation and police reports—but if the minor challenges their sufficiency, "the minimum demands of due process and fair treatment require the prosecution to establish a prima facie case based on competent and relevant evidence. . . . [I]f the minor exercises his right to confront and cross-examine witnesses against him, it becomes the duty of

the court to insure that such persons are present at the appropriate hearing." (*Edsel P. v. Superior Court, supra,* 165 Cal.App.3d 763, 779; *In re William M.* (1970) 3 Cal.3d 16, 28 [89 Cal.Rptr. 33, 473 P.2d 737]; *In re Dennis H.* (1971) 19 Cal.App.3d 350, 354-355 [96 Cal.Rptr. 791].) With these principles in mind, we turn to the specifics of this case. We review the juvenile court's finding of unfitness under the abuse of discretion standard (*People v. Chi Ko Wong, supra,* 18 Cal.3d 698, 718), treating its rulings on the fitness criteria (§ 707, subd. (c)) as factual findings to be upheld if supported by substantial evidence. (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 680, 681, fn. 3 [76 Cal.Rptr.2d 641, 958 P.2d 393].)

## II. THE RECORD

It is undisputed that in the late morning hours of January 13, 2001, Maurice Davis, a 23-year-old groundskeeper for the San Francisco Housing Authority, was shot and killed. He suffered a gunshot wound to the back and another to the thigh. Six shots were fired. By 3:15 p.m. that afternoon Marcus W. was in custody.

In a tape-recorded interview lasting over three hours, two San Francisco Police Department homicide inspectors questioned Marcus. This interrogation commenced over three hours after he was placed in custody.[5] At the outset, Marcus was advised of his *Miranda (Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974]) rights, but never stated that he waived them. Throughout most of the taped interrogation, he denied involvement in the murder. Eventually, he told the police that he shot a gun once, while the victim was running away. He gave the gun to a companion and ran away, hearing more shots as he fled. He insisted his shot did not hit the victim. No physical evidence that Marcus shot or touched a gun appears in this record.

In a juvenile court petition filed January 16, 2001, Marcus was charged with murder and an enhancement for personal use of a firearm (Pen. Code, §§ 187, subd. (a), 12022.5, subd. (a)(1)) committed when he was 15 years old. The offenses are among those listed in section 707, subdivision (b) and trigger the presumption of unfitness. The same day, the district attorney filed a motion to set a fitness hearing to determine whether Marcus should be prosecuted in a criminal court. (§ 707, subd. (c).)

After a hearing on April 17, 2001, the court denied Marcus's motion for discovery of the addresses of percipient witnesses, withheld by the district

---

[5]Homicide inspectors Toomey and Pera told Marcus that he was not under arrest for the murder, although he did have an outstanding arrest warrant. According to the probation report filed November 13, 2001, however, Marcus was arrested on a felony warrant obtained by the police after witnesses identified him as a suspect in the murder.

attorney because the witnesses feared for their safety. In denying the discovery motion, the court said that it would allow disclosure if the witness statements were offered by the prosecution at the prima facie hearing. It is undisputed that Marcus was not provided with the addresses, nor given access to the witnesses prior to that hearing.

On May 23, 2001, after intervening court appearances unrelated to the issues presented here, doubt was declared as to Marcus's competency, and he was ordered evaluated. (Pen. Code, § 1368 et seq.) At a competency hearing on August 15, 2001, two professionals appointed by the court offered conflicting conclusions. Dr. Korpi, who evaluated Marcus on June 12, 2001, opined that he suffered from a thought disorder and was incompetent. Dr. Levy evaluated him later that same month and concluded that he was competent. Dr. Levy explained that Marcus's condition had improved with antipsychotic and antidepressant medications. Dr. Shields, appointed to assist the defense, attempted to perform a psychological evaluation on May 7, 2001, but Marcus was too paranoid to complete the evaluation. Based on this evidence, the court expressed the view that Marcus suffered "from a mental disorder that rendered him unable to cooperate with counsel" when doubt was declared in May. Given his seeming improvement with medication, the court ordered a new evaluation.

At the further competency hearing held October 5, 2001, Dr. French was of the opinion that Marcus was trial competent, having improved with medication, even if he in fact suffered from a thought disorder. The court found him competent and ordered the prima facie hearing and the section 707 hearing to proceed. The hearings commenced that day, and were continued to November 16, 2001.

To establish the prima facie case, the prosecution offered two police reports through the testimony of Inspector Toomey. They described the shooting and included a one-page summary of the taped interrogation of Marcus. Marcus objected on the ground that Inspector Pera, not Inspector Toomey, prepared the reports. The reports were never admitted into evidence. Marcus also moved to exclude his statements on the grounds that (1) the inspectors failed to obtain explicit waivers of his *Miranda* rights; (2) because his IQ was below 60, he was incompetent to waive his *Miranda* rights; and (3) his admissions were involuntary and coerced due to threats, promises of leniency, impermissible police deception, and other impermissible police tactics, as well as his mental illness and low IQ. His written motion included his declaration that in unrecorded conversation the inspectors told him "to tell them what happened and they would let me go." The declaration also explained: "What I didn't know I just told them what they kept telling me they thought happened."

A transcript of the interrogation was in evidence.[6] Dr. Shields testified on behalf of Marcus concerning his findings that Marcus had an IQ below 60 (comparing him to minors with known mental retardation), and that he had a poor understanding of *Miranda* warnings. Dr. Shields's testimony at the earlier competency hearing and Marcus's exhibits on the question of fitness were also in evidence, including the details of his extensive psychiatric history.

The court asked the parties to brief the question whether Marcus had the right to challenge the admissibility of the statements at the combined prima facie and fitness hearing, deferring all rulings until November 30, 2001.[7] On November 30, 2001, supervising probation officers opined that Marcus should be found unfit for treatment. Marcus's probation officer initially recommended that he be found unfit; however, he changed his recommendation in response to Dr. Shields's evaluations.

Relying solely on Marcus's statements to police, the court ruled that the prosecution established a prima face case. In doing so, the court expressly found that Marcus waived his *Miranda* rights and was competent to do so. The court did not rule whether the statements were voluntary.

Declaring him unfit for treatment because of the circumstances and the gravity of the offense (§ 707, subd. (c)(5)), the court concluded that Marcus was not mentally retarded, stating, "I don't give any credibility to that because it is contradicted in my reading of his confession . . . . [¶] . . . I don't find that the intellectual deficits of the minor, if they do exist, or the emotional problems rise to the level of mitigation that would take this out of the jurisdiction under the adult court." Marcus, it is undisputed, is fit for treatment in the juvenile court under the first four criteria of section 707, subdivision (c).

## III. DISCUSSION

■ Marcus contends that the juvenile court erroneously failed to determine whether his admissions to the police were involuntary and coerced. We agree. Although no California case has expressly ruled on this precise question, it is apparent from our review of the law applicable to such

---

[6]A transcript of this interview was considered by juvenile court. The audio- and videotape recordings of it are not before us. A short segment of the videotape was played during cross-examination of Inspector Toomey to demonstrate that Marcus did not expressly state that he waived his *Miranda* rights.

[7]According to his petition, Marcus also had a pending motion to exclude identification evidence because unduly suggestive procedures violated his federal due process rights. This motion is not before us. The court denied it as moot.

proceedings that a minor must be afforded that opportunity. The Attorney General does not contend otherwise.[8]

As we have seen, once the prosecutor establishes that the minor committed the charged offense, the burden shifts to the minor to prove, by a preponderance of the evidence, that he is not unfit for treatment as a juvenile. The prima facie case, and the determination of fitness, must be based upon competent and relevant evidence. (*People v. Superior Court (Jones), supra,* 18 Cal.4th 667, 681, fn. 3; *People v. Chi Ko Wong, supra,* 18 Cal.3d 698, 717-719; *Edsel P. v. Superior Court, supra,* 165 Cal.App.3d 763, 779.) An involuntary confession is inherently untrustworthy. (*Lego v. Twomey* (1972) 404 U.S. 477, 484-485, fn. 12 [92 S.Ct. 619, 624, 30 L.Ed.2d 618]; *Jackson v. Denno* (1964) 378 U.S. 368, 385-386 [84 S.Ct. 1774, 1785, 12 L.Ed.2d 908, 1 A.L.R.3d 1205]; *People v. Badgett* (1995) 10 Cal.4th 330, 347 [41 Cal.Rptr.2d 635, 895 P.2d 877]; *People v. Lee* (2002) 95 Cal.App.4th 772, 782, 787 [115 Cal.Rptr.2d 828].) It is not "credible" (*In re Dennis H., supra,* 19 Cal.App.3d 350; *Edsel P. v. Superior Court, supra,* 165 Cal.App.3d 763, 779) or "reliable." (*People v. Chi Ko Wong, supra,* 18 Cal.3d 698, 719.)

A filing in juvenile court "is not an invitation to procedural arbitrariness" (*Kent v. United States, supra,* 383 U.S. 541, 555 [86 S.Ct. 1045, 1054]), and a transfer hearing "must measure up to the essentials of due process and fair treatment." (*Id.*, at p. 562 [86 S.Ct. at p. 1057]; *In re Gault, supra,* 387 U.S. 1, 30 [87 S.Ct. 1428, 1445].) The essentials of due process and fair treatment include the privilege against self-incrimination (*id.* at p. 55 [87 S.Ct. at p. 1458]) and the presentation of "accurate and reliable information." (*People v. Chi Ko Wong, supra,* 18 Cal.3d 698, 719.)[9] An involuntary, coerced confession violates due process because it results in inherently tainted evidence not independently and freely secured.

---

[8]Below, the district attorney argued that the case was governed by *In re Wayne H.* (1979) 24 Cal.3d 595 [156 Cal.Rptr. 344, 596 P.2d 1]. There, the Supreme Court held that incriminating statements made to a probation officer were admissible at a fitness hearing, but could not be admitted on the substantive question of guilt. (And see *Ramona R. v. Superior Court, supra,* 37 Cal.3d 802, 810.) The role of the probation officer in eliciting the statement "is not the marshalling of evidence on the issue of guilt, but rather the assembling of all available information relevant to an informed disposition of the case . . . or to assist in the evaluation of the minor's fitness for treatment as a juvenile." (*In re Wayne H., supra,* 24 Cal.3d 595, 599.) The role of the police, of course, is to marshal evidence to establish guilt of the perpetrator. A coerced confession implicates fundamental due process.

[9]We recognize that a minor charged directly in criminal court is not identically situated to one charged in juvenile court. (*Manduley, supra,* 27 Cal.4th 537, 567-573.) We note, however, that had the prosecutor filed this case directly in criminal court (§ 707, subd. (d)) an involuntary and coerced confession could be challenged at the preliminary hearing. (*Priestly v. Superior Court* (1958) 50 Cal.2d 812, 815 [330 P.2d 39]; *People v. Ellingsen* (1968) 258 Cal.App.2d 535, 544-545 [65 Cal.Rptr. 744].) At such a hearing, the magistrate must determine whether there is "reasonable cause exists to believe" that a minor committed a

■ The Attorney General contends that Marcus waived a finding on voluntariness by failing to reassert his objection when the court announced the ruling. The Attorney General also argues that by admitting the statements, the court necessarily ruled that they were voluntary. We disagree. Marcus adequately preserved the issue by filing his written motion. (*People v. Morris* (1991) 53 Cal.3d 152, 187-190 [279 Cal.Rptr. 720, 807 P.2d 949].) Moreover, he raised the issue in his cross-examination of Inspector Toomey, and presented the testimony of Dr. Shields to support his motion. The trial court solicited briefing on the question whether Marcus could challenge the statements at the prima facie hearing. The district attorney argued he could not. The conclusion that a confession is voluntary " 'must appear from the record with unmistakable clarity.' " (*In re Juma P., supra,* 204 Cal.App.3d 1228, 1234.) At most, this record suggests the court's conclusion that a motion to exclude the statements as involuntary and coerced did not lie.[10]

## IV. CONCLUSION AND DISPOSITION

The juvenile court erred and abused its discretion when it admitted Marcus's statements without a hearing on the question whether they were involuntary and coerced. The prosecution did not otherwise establish a prima facie case, and the burden of proof improperly shifted to Marcus to establish fitness. The order declaring him unfit to be dealt with in juvenile court must therefore be vacated.

We decline the parties' invitation to decide the voluntariness issue in the first instance and do not express any opinion on whether the statements were voluntary. We likewise decline to address the other errors raised by Marcus.[11] By issuing our writ today, we remand the matter to the juvenile court for a fitness hearing where the parties will be afforded a full opportunity to present evidence on any issues relevant to the questions of a prima facie case and Marcus's fitness.

Let a peremptory writ of mandate issue commanding the San Francisco Superior Court, Juvenile Division, to vacate its order of November 30, 2001,

---

qualifying offense, and in the absence of such evidence, transfer the case to juvenile court. (§ 707, subd. (d)(4).)

[10]The Attorney General also argues that other evidence established the prima facie case. But as Marcus correctly observes, the record establishes that the cited evidence was excluded.

[11]Marcus contends that the court also abused its discretion by (1) finding that he had competently and impliedly waived his *Miranda* rights; (2) denying him access to prosecution witnesses; (3) admitting police reports without allowing him to cross-examine the preparer (*Edsel P. v. Superior Court, supra,* 165 Cal.App.3d 763, 787); (4) admitting testimony from probation supervisors who did not review his file; and (5) failing to accord "great weight" to his experts. (*Jimmy H. v. Superior Court* (1970) 3 Cal.3d 709, 714-715 [91 Cal.Rptr. 600, 478 P.2d 32].)

in *In re Marcus W.*, JW 99-6411, finding Marcus W. not a fit and proper subject to be dealt with under the juvenile court law, and thereafter to conduct a new fitness hearing. (§ 707, subd. (c).)

The stay previously imposed shall remain in effect until the remittitur issues.

Stein, J., and Margulies, J., concurred.