Filed 6/25/13  P. v. Rouston CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GEORGE ROUSTON,<br><br>    Defendant and Appellant. | D060911<br><br><br><br>(Super. Ct. No. SCD234128) |

APPEAL from a judgment of the Superior Court of San Diego County, Theodore M. Weathers, Judge.  Affirmed.

Patrick Morgan Ford for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Charles Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

George Rouston, a minor charged as an adult, pled guilty to assault with a semiautomatic firearm, and admitted enhancements for committing the crime for the benefit of a gang, personal use of a firearm, and personal infliction of great bodily injury.

On appeal, he asserts the trial court improperly punished him multiple times for his single firearm use. We find no reversible error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant's offense, as summarized in the probation report, occurred on April 6, 2011, when defendant and several other males encountered the victim (Christopher Morales) and one or more other males. During the encounter, defendant pulled out a gun and fired several shots, and then he and his companions fled the scene. Morales was shot three times; one of the bullets caused him to lose the ability to feel or move his leg and he was required to undergo surgery.

Morales told the police that at the time of the crime he was "hanging out with his friends"; he ran when he heard gunshots and fell when he was shot; he had no gang affiliation; and he did not know who shot him or why he was shot.

Defendant was identified as the shooter by an anonymous caller to the police and by two witnesses at a photo lineup. Defendant was arrested at the home where he resided with his grandmother. Defendant initially denied knowledge of the shooting, but admitted his involvement when told that he had been identified by witnesses.

According to defendant, he and Morales were members of rival gangs that were engaged in disputes about "tagging" and disrespect of defendant's gang. Defendant heard that Morales was planning to shoot defendant. Fearing for his life and the life of his family, defendant obtained a gun and went to the area of the offense to talk to Morales. When defendant encountered Morales and asked him " 'What's up?' " Morales started

2

running towards defendant with his hand behind his back. Defendant thought Morales "had something" so defendant pulled his gun from his waistband and started shooting.

Defendant told the probation officer he did not intend to shoot Morales but just to point the gun at him to show he was not " 'messing' " and did not want anyone to hurt his family. At the time of the offense he was under the influence of methamphetamine and alcohol; he was not in his right state of mind; and he "was stupid and did not mean to shoot" Morales.

The nature of defendant's alleged offense permitted him to be charged as an adult in criminal court without a finding by a juvenile court that he was unfit to be dealt with in juvenile court. (Welf. & Inst. Code, § 707, subd. (d)(2); see *Manduley v. Superior Court* (2002) 27 Cal.4th 537, 549-550.)[1] Defendant was charged as an adult in criminal court with attempted murder (count 1) and assault with a semiautomatic firearm (count 2, Pen. Code,[2] § 245, subd. (b)), and with three enhancement allegations: (1) committing the offense for the benefit of a gang (§ 186.22, subd. (b)(1)); (2) personal use of a firearm (§ 12022.5, subds. (a), (d)); and (3) personal infliction of great bodily injury (§ 12022.7, subd. (a)).

On July 28, 2011, defendant pled guilty to assault with a semiautomatic firearm and admitted the three enhancements. He also admitted that he personally used a firearm

---

[1]  Charges may be filed directly in criminal court if the minor is at least 14 years old and the alleged offense involves a statutorily-specified circumstance, including personal use of a firearm. (Welf. & Inst. Code, § 707, subd. (d)(2)(B).)

[2]  Subsequent unspecified statutory references are to the Penal Code.

3

within the meaning of the Welfare and Institutions Code provision permitting him to be charged as an adult. (Welf. & Inst. Code, § 707, subd. (d)(2)(B); see fn. 1, *ante.*) The prosecution agreed to dismiss the attempted murder charge and to a sentence between 10 to 20 years.

At sentencing, the prosecution (with the probation officer's concurrence) proposed a 20-year sentence, whereas defense counsel requested a 10-year sentence. In support of their positions, the parties elaborated at length about their differing views on the mitigating and aggravating factors operative during the offense. After listening to the parties' arguments and statements from defendant's family members, the court imposed a 16-year sentence, consisting of: (1) the lower three-year term for assault with a semiautomatic firearm; (2) the lower three-year term for the personal gun use enhancement; and (3) the 10-year term for the gang enhancement. The court explained that it selected the lower three-year terms for the assault offense and gun use enhancement based on defendant's youthful age, lack of significant criminal history, and early acceptance of responsibility. It imposed the 10-year term for the gang enhancement based on defendant's personal use of a firearm, which made the offense a violent felony triggering the 10-year gang enhancement term. Finally, for the personal infliction of great bodily injury enhancement, the court exercised its discretion under section 1385 to strike the punishment for this enhancement in the interests of justice, reasoning that it had "adequate sentencing parameters" without additional custody based on this enhancement.

4

DISCUSSION

I. *Punishment for Both Gang Enhancement and Personal Firearm Use*

Defendant argues the trial court erred by imposing both the 10-year gang benefit enhancement and the personal use of a firearm enhancement because both enhancements were based on his *personal use of a firearm.* As we shall explain, there was no reversible error because the 10-year gang enhancement term could properly be premised on defendant's *personal infliction of great bodily injury* without reliance on his personal gun use.

Section 654 generally provides that when an act or omission is punishable under different statutory provisions, the act or omission may be punished *only once.*[3] Specifically addressing punishment for enhancements based on gun use and great bodily injury, section 1170.1, subdivisions (f) and (g), provides that a *gun use* enhancement may be imposed *only once* for a single offense, and, likewise, a *great bodily injury* enhancement may be imposed *only once* for the offense. However, section 1170.1, subdivisions (f) and (g), also provides that the imposition of a gun use enhancement does

_____

[3]    Section 654 states in relevant part:  "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

5

*not* preclude the imposition of a great bodily injury enhancement for a single offense.[4]

Based on the express terms of section 1170.1, subdivisions (f) and (g), in *People v. Ahmed* (2011) 53 Cal.4th 156, the court held the trial court did not err in imposing both a gun use enhancement and a great bodily injury enhancement for the defendant's single act of firing a gun. (*Id.* at pp. 159-160, 164, 168.) Further, the *Ahmed* court concluded that when a statute specifically permits imposition of multiple enhancements, that specific statute prevails over the more general statutory provision set forth in section 654 that prohibits double punishment for a single act. (*Ahmed, supra*, at pp. 159-161, 163.) *Ahmed* explained: "[T]he personal use of a firearm was an aspect of [the single act of shooting] that, the Legislature has determined, warrants additional punishment; similarly, the infliction of great bodily injury is a different aspect of that act that, the Legislature has determined, also warrants additional punishment." (*Id.* at pp. 163-164.)

---

4    Section 1170.1 states in relevant part:

"(f) When two or more enhancements may be imposed for being armed with or using a dangerous or deadly weapon or a firearm in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. This subdivision shall not limit the imposition of any other enhancements applicable to that offense, including an enhancement for the infliction of great bodily injury.

"(g)  When two or more enhancements may be imposed for the infliction of great bodily injury on the same victim in the commission of a single offense, only the greatest of those enhancements shall be imposed for that offense. This subdivision shall not limit the imposition of any other enhancements applicable to that offense, including an enhancement for being armed with or using a dangerous or deadly weapon or a firearm."

We note that section 1170.1's statement that only the greatest enhancement "shall be imposed" in effect means imposed *and executed* given that the appropriate procedure is for the court to impose the sentence for both enhancements, and then stay execution of the shorter sentence. (*People v. Vega* (2013) 214 Cal.App.4th 1387, 1395-1396; see *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1122-1123, 1125-1126, 1130.)

The gang enhancement statute sets forth varying levels of imprisonment, depending on the nature of the felony of which the defendant is convicted.  At the lowest level, the gang enhancement statute provides for a two-, three-, or four-year term. (§ 186.22, subd. (b)(1)(A).)  The term is elevated to five years for statutorily-defined serious felonies (§ 186.22, subd. (b)(1)(B)), and it is elevated to 10 years for statutorily-defined violent felonies (§ 186.22, subd. (b)(1)(C)).  The statutorily-defined violent felonies that support the 10-year term include felonies for which personal use of a firearm has been charged and proven, *or* for which personal infliction of great bodily injury has been charged and proven.  (§ 667.5, subd. (c)(8).)

Based on section 1170.1, subdivision (f)'s limitation on multiple gun use enhancements, the trial court erred by imposing punishment pursuant to two statutes:  (1) the personal firearm use statute (§ 12022.5, subd. (a)); and (2) the 10-year gang enhancement statute *premised on personal firearm use*.  (*People v. Rodriguez* (2009) 47 Cal.4th 501, 504-505, 508-509.)  However, defendant was also charged with an enhancement for *personal infliction of great bodily injury*, and he admitted this allegation in his guilty plea.  Thus, use of the 10-year gang enhancement term was additionally available premised on the great bodily injury aspect of defendant's offense.  Further, the great bodily injury aspect was available to elevate the gang enhancement to the 10-year term because the court did *not* impose punishment based on the great bodily injury enhancement under section 12022.7, but rather struck this punishment in the furtherance of justice under section 1385.  (*People v. Vega, supra*, 214 Cal.App.4th at p. 1395 [court did not err in imposing punishment based on both firearm use enhancement and 10-year

7

gang enhancement because substantive offense was violent felony due to both gun use *and* infliction of great bodily injury, and sentence on great bodily injury enhancement was stayed].)

Given the availability of the great bodily injury aspect to support application of the 10-year gang enhancement term, there is no reasonable probability the outcome would have been different absent the court's erroneous reliance on the firearm use for the 10-year gang enhancement term. (See *People v. Osband* (1996) 13 Cal.4th 622, 728-729.) The record shows the trial court selected the 16-year total sentence as the appropriate term of custody that defendant should receive for his offense. We have no doubt that if the court had realized it could not rely on defendant's firearm use for both the gang enhancement and the firearm use enhancement, it would have premised imposition of the 10-year gang enhancement term on the great bodily injury aspect of the offense so as to permit imposition of punishment for the section 12022.5 firearm use enhancement.[5]

The court's erroneous reference to the firearm use for the 10-year gang enhancement term was harmless. Because the 10-year gang enhancement term was properly applicable due to the great bodily injury aspect of the crime, the court did not err in imposing punishment based on both the 10-year gang enhancement statute and the firearm use enhancement statute.

---

[5] Indeed, the probation report and the prosecutor's sentencing statement cite the great bodily injury enhancement as establishing the offense as a violent felony for the 10-year gang enhancement term, and suggest imposing and executing this term while staying the sentence on the great bodily injury enhancement.

## II. *Placement of Case in Adult Court Based on Firearm Use*

### *and Enhancement of Sentence Based on Firearm Use*

Defendant argues the trial court violated section 654 and due process/fundamental fairness by using the fact of his personal firearm use to both (1) try him as an adult and (2) enhance his sentence. Defendant contends that placing his case in adult court constitutes punishment within the meaning of section 654's proscription against double punishment because juvenile court focuses on rehabilitation whereas criminal court focuses on punishment.

We agree with defendant that adjudicating a minor's offense in criminal, rather than juvenile, court can readily subject the minor to harsher punishment. (See *Ramona R. v. Superior Court* (1985) 37 Cal.3d 802, 810-811; *Marcus W. v. Superior Court* (2002) 98 Cal.App.4th 36, 41.) Nevertheless, we are not persuaded by defendant's assertion that the placement of his case in adult court constitutes punishment *under section 654*. Section 654's prohibition against double punishment is designed to ensure that a defendant's punishment is commensurate with his or her culpability. (*People v. Sanders* (2012) 55 Cal.4th 731, 742.) Thus, generally a defendant should not be punished twice for a single physical act (*People v. Jones* (2012) 54 Cal.4th 350, 358), nor should a defendant be punished twice for a course of conduct when the defendant entertained a single criminal objective (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208).

The decision to try a minor as an adult constitutes a jurisdictional selection that *exposes* the minor to potentially elevated punishment; however, it does not actually *adjudicate or impose any punishment.* For example, here, the decision to try defendant as

9

an adult because he used a firearm did not determine his punishment; rather, his punishment was resolved via the plea bargaining process and then by the trial court's selection of a sentence within the agreed-upon range. Defendant was not punished for his firearm use when his case was brought in adult court; rather, he was exposed to a potentially longer punishment for the firearm use due to the adult court placement, and then punishment was actually imposed for his firearm use at the time of sentencing in adult court. The mere placement of his case in adult court did not itself constitute a punishment; indeed, defendant could have been acquitted by an adult court jury and received no punishment at all.

Because the placement of a minor's case in adult court constitutes a jurisdictional election that does not determine or impose punishment, section 654 is not operative. For the same reason, we reject defendant's contention that he was punished for his firearm use in a fundamentally unfair manner that violated due process.

DISPOSITION

The judgment is affirmed.

HALLER, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

10