DETJEN, J.
*476 INTRODUCTION
At the conclusion of a court trial, Jeremiah Charlie Brewer (defendant) was convicted of sexual penetration by force ( Pen. Code, § 289, subd. (a)(1)(A) ; count 1), assault with intent to commit rape or forcible sexual penetration during the commission of first degree burglary (id ., § 220, subd. (b); count 2), and kidnapping to commit rape or forcible sexual penetration (id ., § 209, subd. (b)(1); count 3). The court found true allegations in count 1 that defendant substantially increased the risk of harm to the victim inherent in the offense by kidnapping her (id ., § 667.61, subds. (a), (d)(2)), committed the offense during the commission of first degree burglary with the intent of committing sexual penetration by force (id ., § 667.61, subds. (a), (d)(4)), and kidnapped the victim to accomplish the offense (id ., § 667.61, subds. (b), (e)(1)). Defendant was sentenced to an unstayed term of 25 years to life in prison.
In our original unpublished opinion, we held: (1) There was sufficient evidence defendant substantially increased the risk to the victim within the meaning of Penal Code sections 209, subdivision (b)(1), and 667.61, subdivision (d)(2) by moving her within her own apartment; (2) The fact the allegation under subdivision (d)(2) of section 667.61 of the Penal Code was found true does not require reversal of the true finding under section 667.61, subdivision (e)(1) of that code; and (3) Defendant's sentence does not constitute cruel and/or unusual punishment under the federal and *626 state Constitutions, and his trial attorney was not ineffective for failing to object on that ground. Accordingly, we affirmed.
Defendant petitioned for rehearing, arguing that Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Proposition 57 or the Act), enacted by the voters on November 8, 2016, applies retroactively to his case and requires a remand to the juvenile court system for further proceedings.[1] We granted rehearing to determine whether defendant is entitled to relief under the Act. In the published portion of this opinion, we conclude Proposition 57 does not *477 apply retroactively to defendant's case. In so holding, we reject claims the Act reduces the range of punishment for all juvenile offenders by giving the juvenile court exclusive jurisdiction over all juveniles, and creates a previously unavailable affirmative defense. In the unpublished portion, we adhere to our original analysis and again find no error. Accordingly, we again affirm.
FACTS **
DISCUSSION
1.-3.***
4. PROPOSITION 57
We granted rehearing and asked the parties to submit supplemental briefing regarding whether Proposition 57 applies retroactively to defendant's case. Defendant argues Proposition 57 applies retroactively to all cases not yet final, pursuant to In re Estrada (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 ( Estrada ). He says: " Estrada 's retroactivity presumption applies ... for several reasons: reduction of punishment; creation of an affirmative defense[;] and retroactive application is consonant with [the Act's] stated purposes."
Procedural Background and Proposition 57
Historically, before a minor could be tried in criminal (adult) court, California required a finding the minor was unfit to be dealt with under the juvenile court law. (See, e.g., Juan G. v. Superior Court (2012) 209 Cal.App.4th 1480, 1493, 147 Cal.Rptr.3d 816 ; People v. Cardona (2009) 177 Cal.App.4th 516, 523-524, 99 Cal.Rptr.3d 313.) Although, prior to 1999, there were no provisions for the direct filing (mandatory or discretionary) of charges against juveniles in criminal court ( Juan G. , supra , at p. 1493, 147 Cal.Rptr.3d 816 ), a presumption of unfitness for minors, aged 16 years old or older and charged with specified offenses, was added to the Welfare and Institutions Code[5] in 1979, and extended, in 1994, to minors between the ages of 14 and 16 who *478 were alleged to have committed certain forms of murder ( People v. Superior Court (Jones) (1998) 18 Cal.4th 667, 680-681, fn. 1, 76 Cal.Rptr.2d 641, 958 P.2d 393 ).
In 1999, the Legislature added subdivision (b) to section 602, mandating the direct filing in criminal (adult) court of criminal cases against minors 16 years of age or older under specified circumstances. ( Juan G. v. Superior Court , supra , 209 Cal.App.4th at p. 1493, 147 Cal.Rptr.3d 816.) In 2000, voters approved Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998. In pertinent part, it "confer[red] upon prosecutors the discretion *627 to bring specified charges against certain minors directly in criminal court, without a prior adjudication by the juvenile court that the minor is unfit for a disposition under the juvenile court law." ( Manduley v. Superior Court (2002) 27 Cal.4th 537, 545, 117 Cal.Rptr.2d 168, 41 P.3d 3 ; see generally id ., at pp. 548-550, 117 Cal.Rptr.2d 168, 41 P.3d 3.) Proposition 21 also decreased, to 14, the minimum age for mandatory criminal prosecutions. ( Manduley , supra , at p. 550, 117 Cal.Rptr.2d 168, 41 P.3d 3.)
Elizabeth F. was sexually assaulted by defendant on February 10, 2012. Defendant was born October 13, 1995, making him 16 years old at the time of the crimes of which he was convicted. For unknown reasons, despite the provisions of former section 602, subdivision (b), mandating the direct filing of the accusatory pleading in criminal court, defendant's case proceeded by way of a juvenile wardship petition, filed March 9, 2012, under former section 602, subdivision (a).[6] The probation officer recommended that defendant be found not a fit and proper subject to be dealt with under the juvenile court law. On June 6, 2012, following a contested hearing, the juvenile court so found, and referred the matter to the district attorney for prosecution under the general law.
On June 8, 2012, charges were filed against defendant in criminal court. He was convicted on September 2, 2014, and sentenced on October 29, 2014. His notice of appeal was filed on November 26, 2014. On November 8, 2016, while defendant's appeal was pending, voters enacted Proposition 57. It went into effect the next day. ( Cal. Const., art. II, § 10, subd. (a).) Insofar as we are concerned, the Act eliminated the People's ability to initiate criminal cases against juvenile offenders anywhere but in juvenile court. The Act also *479 removed the presumption of unfitness that previously attached to the alleged commission of certain offenses.[7]
The purpose of the portions of Proposition 57 that deal with juvenile offenders is to undo Proposition 21. (See generally People v. Marquez (2017) 11 Cal.App.5th 816, 821, 217 Cal.Rptr.3d 814, review granted July 26, 2017, S242660.) Thus, two of the Act's stated purposes, contained in uncodified *628 section 2 thereof, are to "[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles," and "[r]equire a judge, not a prosecutor, to decide whether juveniles should be tried in adult court." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141 (Voter Information Guide).)[8]
Analysis
There can be no doubt that, had defendant committed his offenses after Proposition 57 went into effect, he would have been entitled to a fitness hearing-with no presumption of unfitness-before his case could be transferred to criminal court for prosecution.[9] The question we confront is whether Proposition 57 applies to juvenile offenders who, like defendant, were charged, tried, convicted, and sentenced before the Act's effective date, but whose cases are not yet final on appeal. (See People v. Covarrubias (2016) 1 Cal.5th 838, 935, 207 Cal.Rptr.3d 228, 378 P.3d 615 [for purpose of determining retroactive application of amendment to criminal statute, judgment is not final until time for petitioning for writ of certiorari in United *480 States Supreme Court has passed].) This is a purely legal question we analyze de novo. (See People v. Arroyo (2016) 62 Cal.4th 589, 593, 197 Cal.Rptr.3d 122, 364 P.3d 168.)[10]
Defendant says the provisions of Proposition 57 requiring a juvenile fitness/transfer hearing, and repealing the presumption of unfitness, apply to all cases not yet final. We disagree.
In ascertaining whether a statute should be applied retroactively, the intent of the electorate, or the Legislature, "is the 'paramount' consideration ...." ( People v. Nasalga (1996) 12 Cal.4th 784, 792, 50 Cal.Rptr.2d 88, 910 P.2d 1380 (plur. opn. of Werdegar, J.); see People v. Conley (2016) 63 Cal.4th 646, 656, 203 Cal.Rptr.3d 622, 373 P.3d 435.) " ' "In interpreting a voter initiative" ' such as Proposition [57], ' "we apply the same principles that govern statutory construction. [Citation.] Thus, ... 'we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.] ... The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. [Citation.] ... When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' " ' [Citation.] 'In other words, our "task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent." ' [Citation.]" ( *629 People v. Arroyo , supra , 62 Cal.4th at p. 593, 197 Cal.Rptr.3d 122, 364 P.3d 168.)
"It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise. [Citations.]" ( Tapia v. Superior Court , supra , 53 Cal.3d at p. 287, 279 Cal.Rptr. 592, 807 P.2d 434.) While the Welfare and Institutions Code does not contain a statutory codification of this principle (cf., e.g., Code Civ. Proc., § 3, Pen. Code, § 3 ), the California Supreme Court has made clear such statutory language " 'does no more than codify a general rule of construction, applicable as well to statutes containing no such provision. [Citations.]' [Citation.]" ( Stenger v. Anderson (1967) 66 Cal.2d 970, 977, fn. 13, 59 Cal.Rptr. 844, 429 P.2d 164.)
The provisions of Proposition 57 affecting only juvenile offenders contain no express statement regarding retroactivity. Defendant seeks support *481 for his claim of retroactive application in the fact the Act contains no savings clause; the specified purposes of the Act, quoted ante ; uncodified section 5 of the Act, which says the Act "shall be broadly construed to accomplish its purposes" (Voter Information Guide, supra , text of Prop. 57, § 5, p. 145); and uncodified section 9 of the Act, which says the Act "shall be liberally construed to effectuate its purposes" (Voter Information Guide, supra , text of Prop. 57, § 9, p. 146). He says retroactivity furthers the goals of Proposition 57. Our Supreme Court, however, has "been cautious not to infer the voters' or the Legislature's intent on the subject of prospective versus retrospective operation from 'vague phrases' [citation] and 'broad, general language' [citation] in statutes, initiative measures and ballot pamphlets." ( Californians for Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, 229-230, 46 Cal.Rptr.3d 57, 138 P.3d 207.) "Accordingly, we will not attempt to infer from the ambiguous general language of Proposition [57] whether the voters intended the measure to apply to ... cases [that are not yet final]. Instead, we will employ the ordinary presumptions and rules of statutory construction commonly used to decide such matters when a statute is silent." ( Id . at p. 230, 46 Cal.Rptr.3d 57, 138 P.3d 207.)
" '[A] statute that is ambiguous with respect to retroactive application is construed ... to be unambiguously prospective.' [Citations.]" ( Myers v. Philip Morris Companies, Inc. (2002) 28 Cal.4th 828, 841, 123 Cal.Rptr.2d 40, 50 P.3d 751, quoting, inter alia, INS v. St. Cyr (2001) 533 U.S. 289, 320-321, fn. 45, 121 S.Ct. 2271, 150 L.Ed.2d 347.) Defendant argues, however, that Proposition 57 falls within the exception to this general principle carved out by Estrada , supra , 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948.
Estrada dealt with a situation in which, at the time of Estrada's offense (escape without force or violence), the applicable statutes mandated a sentence of at least one year's imprisonment, to commence from the time the prisoner would have been discharged otherwise, with no grant of parole until service of at least two calendar years from the date of the escapee's return to prison after conviction. After Estrada committed the crime, but before his conviction and sentence, the statutes were amended to provide for a sentence of six months to five years in prison, with no minimum date for parole eligibility. ( Estrada , supra , 63 Cal.2d at pp. 743-744, 48 Cal.Rptr. 172, 408 P.2d 948.)[11] The California Supreme Court stated:
*630 "The problem, of course, is one of trying to ascertain the legislative intent-did the Legislature intend the old or new statute to apply? Had the *482 Legislature expressly stated which statute should apply, its determination, either way, would have been legal and constitutional. It has not done so. We must, therefore, attempt to determine the legislative intent from other factors.
"There is one consideration of paramount importance. It leads inevitably to the conclusion that the Legislature must have intended, and by necessary implication provided, that the amendatory statute should prevail. When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." ( Estrada , supra , 63 Cal.2d at pp. 744-745, 48 Cal.Rptr. 172, 408 P.2d 948.)
With respect to Penal Code section 3, the court stated: "That section simply embodies the general rule of construction, coming to us from the common law, that when there is nothing to indicate a contrary intent in a statute it will be presumed that the Legislature intended the statute to operate prospectively and not retroactively. That rule of construction, however, is not a straitjacket. Where the Legislature has not set forth in so many words what it intended, the rule of construction should not be followed blindly in complete disregard of factors that may give a clue to the legislative intent. It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent. In the instant case there are ... other factors that indicate the Legislature must have intended that the amendatory statute should operate in all cases not reduced to final judgment at the time of its passage." ( Estrada , supra , 63 Cal.2d at p. 746, 48 Cal.Rptr. 172, 408 P.2d 948.)
We conclude Estrada does not require that the provisions of Proposition 57 be applied retroactively to defendant's case. Although Estrada has been broadly applied in the past (see, e.g., People v. Francis (1969) 71 Cal.2d 66, 75-76, 75 Cal.Rptr. 199, 450 P.2d 591 [applying Estrada to statutory amendment vesting in trial court discretion to impose either same penalty as under former law or lesser penalty] ), the California Supreme Court has since made it clear Estrada "supports an important, contextually specific qualification to the ordinary presumption that statutes operate prospectively: When the Legislature has amended a statute to reduce the punishment for a particular criminal offense , we will assume, absent evidence to the contrary, that the *483 Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on *631 the statute's operative date. [Citation.]" ( People v. Brown (2012) 54 Cal.4th 314, 323, 142 Cal.Rptr.3d 824, 278 P.3d 1182, italics added, fn. omitted ( Brown ).)
The state high court noted the "limited role Estrada properly plays in our jurisprudence of prospective versus retrospective operation" ( Brown , supra , 54 Cal.4th at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ), and found Estrada 's statement about the rule of construction codified in Penal Code section 3 not being a "straitjacket" ( Estrada , supra , 63 Cal.2d at p. 746, 48 Cal.Rptr. 172, 408 P.2d 948 ), if applied broadly and literally, would "endanger the default rule of prospective operation" ( Brown , supra , at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ). The court concluded: " Estrada is today properly understood, not as weakening or modifying the default rule of prospective operation codified in [Penal Code] section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments. [Citation.]" ( Ibid ., italics added.) The court rejected the argument Estrada should be understood to apply to any statute that reduced punishment in any manner, noting "the rule and logic of Estrada is specifically directed to a statute that represents ' "a legislative mitigation of the penalty for a particular crime " ' [citation] ...." ( Brown , supra , at p. 325, 142 Cal.Rptr.3d 824, 278 P.3d 1182, original italics.)
Brown concerned the application of a change in the rate at which prisoners in local custody could earn conduct credits ( Brown , supra , 54 Cal.4th at pp. 317-318, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ), a very different situation than we confront here. Nevertheless, we cannot just blithely write off, on that ground, a pronouncement by our state's highest court that limits the holding in one of that court's prior cases. That the state Supreme Court did not intend this limitation to apply only in the circumstances presented in Brown is clearly demonstrated by the fact it cited to a discussion of the default rule of prospective application, and rejection of a broad interpretation of Estrada , contained in Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1208-1209, 246 Cal.Rptr. 629, 753 P.2d 585, a civil case. ( Brown , supra , at pp. 324-325, 142 Cal.Rptr.3d 824, 278 P.3d 1182.) The Supreme Court's application of the limitation on Estrada in two such disparate scenarios strongly signals its intent that said limitation should be broadly applied. This is especially so when we take into account that court's more recent reference to Brown as "acknowledging the continuing viability of the Estrada rule, [but] emphasiz[ing] its narrowness ...." ( People v. Hajek and Vo (2014) 58 Cal.4th 1144, 1196, 171 Cal.Rptr.3d 234, 324 P.3d 88, disapproved on another ground in People v. Rangel (2016) 62 Cal.4th 1192, 1216, 200 Cal.Rptr.3d 265, 367 P.3d 649.)
We recognize significant differences exist between juvenile and adult offender laws, and that "[t]he former seeks to rehabilitate, while the latter *484 seeks to punish." ( In re Julian R. (2009) 47 Cal.4th 487, 496, 97 Cal.Rptr.3d 790, 213 P.3d 125.) We also recognize "the certification of a juvenile offender to an adult court has been ... characterized as 'the worst punishment the juvenile system is empowered to inflict.' [Citation.]" ( Ramona R. v. Superior Court (1985) 37 Cal.3d 802, 810, 210 Cal.Rptr. 204, 693 P.2d 789.) Proposition 57 has the potential to reduce the range of permissible punishment-including that applicable to the offenses of which defendant was convicted-for a class of offenders. Nevertheless, no provision of Proposition 57 mitigates the penalty for a particular criminal *632 offense. Accordingly, Estrada does not overcome the strong presumption of prospective-only application.
Defendant argues the Act reduces the range of punishment for juvenile offenses that previously were subject to direct filing in criminal court by giving juvenile courts "exclusive" jurisdiction over all juveniles. To the contrary, "[t]he juvenile court and the criminal court are divisions of the superior court, which has subject matter jurisdiction over criminal matters and civil matters, including juvenile proceedings. (See Cal. Const., art. VI, § 10.) When exercising the jurisdiction conferred by the juvenile court law, the superior court is designated as the juvenile court. (... § 245.) Accordingly, when we refer ... to the jurisdiction of the juvenile court or the jurisdiction of the criminal court, we do not refer to subject matter jurisdiction, but rather to the statutory authority of the particular division of the superior court, in a given case, to proceed under the juvenile court law or the law generally applicable in criminal actions. [Citation.]" ( Manduley v. Superior Court , supra , 27 Cal.4th at p. 548, fn. 3, 117 Cal.Rptr.2d 168, 41 P.3d 3, 27 Cal.4th 887A at p. 548, fn. 3 ; see People v. Cardona , supra , 177 Cal.App.4th at p. 527, 99 Cal.Rptr.3d 313.) As to crimes that qualify a juvenile offender for transfer to adult court, such as those committed by defendant (§ 707, subd. (a)(1)), subject matter jurisdiction is concurrent between the criminal division and the juvenile division. (See Manduley , supra , at p. 562, 117 Cal.Rptr.2d 168, 41 P.3d 3.)
As previously noted, the portions of Proposition 57 applicable only to juvenile offenders contain no express retroactivity provision. By contrast, the Act expressly renders the provisions relating to eligibility for parole consideration retroactive by making them applicable to "[a]ny person convicted ... and sentenced ...." ( Cal. Const., art. I, § 32, subd. (a)(1); see People v. Franklin (2016) 63 Cal.4th 261, 278, 202 Cal.Rptr.3d 496, 370 P.3d 1053 [discussing retroactivity of youth offender parole hearings under Pen. Code, § 3051 ].) Moreover, section 707, subdivision (a)(1), as amended by the Act, mandates that any motion to transfer the minor from juvenile court to criminal court "must be made prior to the attachment of jeopardy ." (Italics added.)
"The voters are presumed to have been aware of existing law at the time an initiative was enacted. [Citations.]" ( *485 Juan G. v. Superior Court , supra , 209 Cal.App.4th at p. 1494, 147 Cal.Rptr.3d 816.) In addition, we generally assume voters considered the entire text of a proposal submitted to them for enactment. (See People v. Valencia (2017) 3 Cal.5th 347, 369, 220 Cal.Rptr.3d 230, 397 P.3d 936.) This being the case, logic dictates that had voters intended the juvenile offender provisions of Proposition 57 to apply to such offenders who were already tried, convicted, and sentenced, the enactment would have included an express provision to that effect, as did the parole eligibility portions of the Act.
When interpreting a legislative enactment, " '[w]e must ... avoid a construction that would produce absurd consequences, which we presume the Legislature [or voters] did not intend. [Citations.]' [Citation.]" ( In re Greg F. (2012) 55 Cal.4th 393, 406, 146 Cal.Rptr.3d 272, 283 P.3d 1160 ; see People v. Union Pacific Railroad Co. (2006) 141 Cal.App.4th 1228, 1257 & fn. 5, 47 Cal.Rptr.3d 92.) To hold Proposition 57 applies retroactively to defendants who have been convicted and sentenced, but whose judgments are not yet final, would mean an offender who was tried and convicted by a jury of special circumstance murder upon proof beyond a reasonable doubt, and sentenced to life in prison without the possibility of parole by *633 a court that carefully considered whether to impose a lesser term of 25 years to life as permitted by Penal Code section 190.5, subdivision (b), would be given the opportunity of being released within a matter of a few years (see, e.g., §§ 607, 1769, 1771). This is so even though the life-without-parole sentence comported with the Eighth Amendment to the United States Constitution, as construed in Miller v. Alabama (2012) 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 and Montgomery v. Louisiana (2016) 577 U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599. It is difficult to imagine a more absurd result, or that voters intended for such an offender to be returned to society within such a short time.
Defendant asserts, however, that Proposition 57 applies retroactively because it "creates an affirmative defense that was unavailable at the time of the denial of [defendant's] petition to be adjudged in juvenile court and at the time of his criminal adult trial. Specifically, had Proposition 57 been in effect, the judge would have acted in excess of its jurisdiction by denying [defendant's] petition and referring him to adult criminal court because Proposition 57 changed the rules of the game in [defendant's] favor. And those rules would likely have tipped the scales in favor of [defendant] remaining in the juvenile court system where he would not have been a criminal sent to prison but subject to rehabilitation measures by the juvenile court if found to have committed the charged offenses." Defendant points to the increase, under the Act, in prosecutorial discretion whether to seek to try a juvenile as an adult, as well as the factors to be weighed by a juvenile court in evaluating whether transfer from a juvenile court to an adult court is appropriate.
*486 It is true that new defenses generally are given retroactive application. (See, e.g., People v. Wright (2006) 40 Cal.4th 81, 95-96, 51 Cal.Rptr.3d 80, 146 P.3d 531 ; People v. Urziceanu (2005) 132 Cal.App.4th 747, 785-786, 33 Cal.Rptr.3d 859 ; People v. Trippet (1997) 56 Cal.App.4th 1532, 1544-1545, 66 Cal.Rptr.2d 559.) In our view, defendant does not establish the Act created a true defense. Rather, he argues, based on his own personal circumstances, that "Proposition 57 significantly increased the likelihood [defendant's] case would be handled in juvenile court and he would thereby receive a less severe sentence and no criminal record or status." We reject defendant's reasoning. "Whether or not the [electorate] intended the [enactment] to be retroactive to cases not final before the effective date [thereof] obviously cannot be decided on the basis of the particular facts of this or any other individual case." ( People v. Francis , supra , 71 Cal.2d at pp. 76-77, 75 Cal.Rptr. 199, 450 P.2d 591.)
Defendant also argues that if his fitness hearing had been conducted pursuant to the Act, the juvenile court's ruling would have been in excess of its jurisdiction, because defendant was not afforded the right to have (1) the prosecutor exercise discretion in determining whether defendant's was a case that merited a petition for transfer to adult court, (2) a hearing without a presumption of unfitness, and (3) a hearing in which the prosecution, not defendant, bore the burden of proof on the question of fitness. This argument is valid only if Proposition 57 applies retroactively. We have held it does not. Nor, in our view, do the changes in the law occasioned by the Act require a finding of retroactivity when, as we have concluded, voters did not intend retroactive application.
"[T]here is no express constitutional guarantee giving a minor the right to trial in juvenile court, let alone affording him a presumption of fitness for trial in juvenile court. Nor is there authority establishing *634 the rebuttable presumption [of unfitness] impacts a fundamental right implicitly guaranteed by the Constitution. [Citation.]" ( Hicks v. Superior Court (1995) 36 Cal.App.4th 1649, 1658, 43 Cal.Rptr.2d 269, fn. omitted; see Manduley v. Superior Court , supra , 27 Cal.4th at pp. 564-565, 117 Cal.Rptr.2d 168, 41 P.3d 3 ; see generally In re Gault (1967) 387 U.S. 1, 14-17, 87 S.Ct. 1428, 18 L.Ed.2d 527 [describing genesis and development of juvenile court system].) "The sole purpose of the fitness hearing is to determine whether the best interest of the minor and of society will be served by retention in the juvenile court or whether the minor should be tried as an adult. [Citation.]" ( People v. Superior Court (Ronald H.) (1990) 219 Cal.App.3d 1475, 1479, 269 Cal.Rptr. 4.) The type of penalty that may be imposed upon conviction as an adult is irrelevant to the determination of a minor's amenability to treatment within the juvenile system ( ibid . ), as is guilt or innocence ( Rene C. v. Superior Court (2006) 138 Cal.App.4th 1, 10, 41 Cal.Rptr.3d 71 ). *487 This being the case, neither removal of the presumption of unfitness nor alteration of the burden of proof as to fitness implicates the federal Constitution. Neither change alters the elements of the crime(s) charged nor the requirement that the prosecution prove guilt beyond a reasonable doubt. Neither denies a juvenile offender his or her rights to notice of charges, to counsel, to confront and cross-examine witnesses, nor to the privilege against self-incrimination. (See Marcus W. v. Superior Court (2002) 98 Cal.App.4th 36, 41, 118 Cal.Rptr.2d 919.)
Defendant insists that, because the juvenile court's actions would have been in excess of its jurisdiction had the fitness hearing proceeded under Proposition 57, failing to apply the Act retroactively would deny defendant his right to the affirmative defense of the lower court acting in excess of its jurisdiction, which in turn would deny him due process under the federal Constitution. As support, defendant cites Kent v. United States (1966) 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 ( Kent ).
Kent concerned a District of Columbia law that permitted the juvenile court to waive its jurisdiction " 'after full investigation' " and order certain specified juvenile offenders held for trial in regular criminal court, but which did not state standards to govern the juvenile court's waiver decision. ( Kent , supra , 383 U.S. at pp. 547-548, 86 S.Ct. 1045.) Kent's attorney requested a hearing on the question of waiver, offered to prove Kent was a suitable subject for rehabilitation in the juvenile court system, and asked for access to the social service file compiled by juvenile court staff during Kent's prior probation period that would be available to the juvenile court judge for consideration on the waiver question. The juvenile court judge did not rule on any of the motions, hold a hearing, or confer with Kent, Kent's parents, or Kent's counsel. He simply entered an order reciting that after " 'full investigation,' " he waived jurisdiction. He made no findings and recited no reasons for the waiver, although the high court assumed that, prior to entry of the order, the judge received and considered recommendations of the juvenile court staff, the social service file relating to Kent, and a juvenile probation report. ( Id . at pp. 545-547, 86 S.Ct. 1045.) Kent ultimately was convicted of multiple felonies in criminal court and sentenced to a lengthy prison term, some of which was to be spent in a psychiatric facility in light of the jury's finding of insanity on one of the charges. ( Id . at p. 550, 86 S.Ct. 1045.)
The United States Supreme Court held the order of the juvenile court, waiving its jurisdiction and transferring Kent for trial in adult court, was invalid. ( *635 Kent , supra , 383 U.S. at p. 552, 86 S.Ct. 1045.) The court stated: "[T]he statute contemplates that the Juvenile Court should have considerable latitude within which to determine whether it should retain jurisdiction over a child or-subject to the statutory delimitation-should waive jurisdiction. But this *488 latitude is not complete. At the outset, it assumes procedural regularity sufficient in the particular circumstances to satisfy the basic requirements of due process and fairness, as well as compliance with the statutory requirement of a 'full investigation.' [Citation.] The statute gives the Juvenile Court a substantial degree of discretion as to the factual considerations to be evaluated, the weight to be given them and the conclusion to be reached. It does not confer upon the Juvenile Court a license for arbitrary procedure. The statute does not permit the Juvenile Court to determine in isolation and without the participation or any representation of the child the 'critically important' question whether a child will be deprived of the special protections and provisions of the Juvenile Court Act." ( Id . at pp. 552-553, 86 S.Ct. 1045, fns. omitted.)
The high court found it "clear beyond dispute" that the waiver of the juvenile court's jurisdiction was "a 'critically important' action determining vitally important statutory rights of the juvenile," as the statutory scheme vested the juvenile court "with 'original and exclusive jurisdiction' of the child." ( Kent , supra , 383 U.S. at p. 556, 86 S.Ct. 1045.) The court stated: "The net, therefore, is that [Kent]-then a boy of 16-was by statute entitled to certain procedures and benefits as a consequence of his statutory right to the 'exclusive' jurisdiction of the Juvenile Court. In these circumstances, considering particularly that decision as to waiver of jurisdiction and transfer of the matter to the [adult] [c]ourt was potentially as important to [Kent] as the difference between five years' confinement and a death sentence, we conclude that, as a condition to a valid waiver order, [Kent] was entitled to a hearing, including access by his counsel to the social records and probation or similar reports which presumably are considered by the court, and to a statement of reasons for the Juvenile Court's decision. We believe that this result is required by the statute read in the context of constitutional principles relating to due process and the assistance of counsel." ( Id . at p. 557, 86 S.Ct. 1045.)
As we have explained, California's juvenile court law, unlike the statutory scheme at issue in Kent , does not confer exclusive jurisdiction on the juvenile court. More importantly, defendant received that which due process required at the time of his fitness hearing. (See Manduley v. Superior Court , supra , 27 Cal.4th at p. 562, 117 Cal.Rptr.2d 168, 41 P.3d 3.) " Kent ... held only that where a statute confers a right to a judicial determination of fitness for a juvenile court disposition, the due process clause requires that the determination be made in compliance with the basic procedural protections afforded to similar judicial determinations." ( Manduley , supra , at p. 566, 117 Cal.Rptr.2d 168, 41 P.3d 3.) That the procedure for determining where a juvenile offender should be tried has been changed by Proposition 57 to require a judicial determination of unfitness in all circumstances does not mean the new procedure applies retroactively to cases in which the offender has already been convicted, or that failure to so apply it *489 denies the offender an affirmative defense, impinges on a liberty interest, or violates due process. Kent does not hold to the contrary.[12] *636 DISPOSITION
The judgment is affirmed.
I CONCUR:
HILL, P.J.
SMITH, J., Concurring and Dissenting-Published
I concur with the majority in sections 1, 2, and 3, which comprise the unpublished portion of this opinion. I dissent from section 4 of the majority opinion, which addresses the question of whether Proposition 57 applies prospectively only or also retroactively to cases such as this one, which were pending final judgment on its effective date. The majority has determined that Proposition 57 applies prospectively only. I believe the better argument is that the electorate intended the amendments effected by Proposition 57 also to apply retroactively, to cases that were not final at the time of the proposition's enactment. Accordingly, I would apply Proposition 57 retroactively here. In turn, I would conditionally reverse the judgment and remand the matter for the juvenile court to conduct a new fitness hearing, pursuant to Welfare and Institutions Code sections 602 and 707, as amended by Proposition 57.[1]
Although there is a general presumption that new laws apply prospectively, Tapia v. Superior Court (1991) 53 Cal.3d 282, 287, 279 Cal.Rptr. 592, 807 P.2d 434, I conclude that Proposition 57 is subject to the exception to that presumption articulated in In re Estrada (1965) 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 ( Estrada ). In Estrada , our Supreme Court held: "When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." ( People v. Brown (2012) 54 Cal.4th 314, 323, 142 Cal.Rptr.3d 824, 278 P.3d 1182, fn. omitted ( Brown ).) Brown explained that Estrada "articulate[d] the reasonable presumption that a legislative act mitigating the punishment for a particular *490 criminal offense is intended to apply to all nonfinal judgments." ( Brown , supra , at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182 ; People v. Conley (2016) 63 Cal.4th 646, 656, 203 Cal.Rptr.3d 622, 373 P.3d 435 ( Conley ) [ Estrada "held that new laws that reduce the punishment for a crime are presumptively to be applied to defendants whose judgments are not yet final"].)
Estrada 's rationale is based on the principle that, " '[o]rdinarily,' ... 'when an amendment lessens the punishment for a crime one may reasonably infer the Legislature has determined imposition of a lesser punishment on offenders thereafter will sufficiently serve the public interest.' " ( People v. Nasalga (1996) 12 Cal.4th 784, 791, 50 Cal.Rptr.2d 88, 910 P.2d 1380 ( Nasalga ).) Estrada explained: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty *637 was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. ... [T]o hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology." ( Estrada , supra, 63 Cal.2d at p. 745, 48 Cal.Rptr. 172, 408 P.2d 948 ; see Conley , supra , 63 Cal.4th at p. 656, 203 Cal.Rptr.3d 622, 373 P.3d 435 ["when the Legislature determines that a lesser punishment suffices for a criminal act, there is ordinarily no reason to continue imposing the more severe penalty beyond simply ' "satisfy[ing] a desire for vengeance" ' "].) In short, " Estrada stands for the proposition that, 'where the amendatory statute mitigates punishment and there is no saving clause, the rule is that the amendment will operate retroactively so that the lighter punishment is imposed.' " ( Nasalga , supra , 12 Cal.4th at p. 792, 50 Cal.Rptr.2d 88, 910 P.2d 1380.)
The majority contends that any finding that Proposition 57 has retroactive application is foreclosed by Brown , notwithstanding the fact that Brown addressed a very different type of statute. Brown appeared to emphasize that the Estrada rule applies only when an amendatory statute reduces the penalty for a particular crime. ( Brown , supra , 54 Cal.4th at p. 324, 142 Cal.Rptr.3d 824, 278 P.3d 1182.) The majority reasons that because Proposition 57 does not directly reduce the penalty for any particular crime, it is not retroactive under Estrada and Brown . Brown , however, considered the question whether a statute temporarily (i.e., for just an eight-month period) increasing good behavior credits for prisoners after sentencing, amounted to a reduction in punishment under Estrada. ( Brown , supra , 54 Cal.4th at pp. 317, 323-324, 142 Cal.Rptr.3d 824, 278 P.3d 1182.) The statute at issue in Brown had nothing to do with the punishment or actual sentence facing a defendant for committing a crime. ( Id . at p. 325, 142 Cal.Rptr.3d 824, 278 P.3d 1182, italics added ["Instead of addressing punishment for past criminal conduct , the statute addresses future conduct in a custodial setting by providing increased incentives for good behavior."].) Indeed, the statute was enacted as a temporary response to a state "fiscal *491 crisis," and in no way reflected a legislative judgment that certain offenses were erstwhile punished too severely. ( Ibid. [a statute increasing conduct credits for good behavior after imposition of sentence "does not represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent"].)
Proposition 57, on the contrary, expressly aims to facilitate rehabilitative dispositions for minors, based on past criminal conduct, with respect to a limited subset of the most serious crimes (i.e., the crimes for which minors are subject to prosecution in adult criminal court). (See Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 2, p. 141[2] [Proposition 57 was intended to "[s]top the revolving door of crime by emphasizing rehabilitation, especially for juveniles" by "[r]equir[ing] a judge, not a prosecutor, to decide whether juveniles should be tried in adult court."]; see id ., argument in favor of Prop. 57, p. 58 ["Prop. 57 focuses on evidence-based rehabilitation" by allowing "a *638 judge to decide whether or not a minor should be prosecuted as an adult."].) In order to achieve its stated goal of facilitating rehabilitation, Proposition 57, abolishes the prosecution's ability directly to file criminal charges against minors in adult court, and erases any presumption of unfitness of a minor for purposes of juvenile court jurisdiction over his or her matter. (See, e.g., People v. Superior Court (Walker ) (2017) 12 Cal.App.5th 687, 696, 220 Cal.Rptr.3d 1, review granted Sept. 13, 2017, S243072.) All cases against minors are now required to be filed in juvenile court and, in order to move the case to adult court, the prosecution must bring a transfer motion, whereby it, as the proponent of the motion, shoulders the burden of showing the minor is unfit for the jurisdiction of the juvenile court. ( § 707, subd. (a)(1) & (2) ; Evid. Code, §§ 500, 550.)
Under Proposition 57, it undeniably is harder to prosecute minors in adult court. It follows that Proposition 57 militates against imposition of the maximum punishment for the underlying subset of crimes for which minors can be prosecuted in adult court. (See People v. Pineda (2017) 14 Cal.App.5th 469, 482, fn. 9, 222 Cal.Rptr.3d 269 ( Pineda ) [Proposition 57 provides for "reductions in punishment for a host of penal statues without need of going to the trouble of enumerating them all."].) Our Supreme Court has recognized, "[transferring] a juvenile offender to an adult court has been accurately characterized as 'the worst punishment the juvenile system is empowered to inflict.' " ( *492 Ramona R. v. Superior Court (1985) 37 Cal.3d 802, 810, 210 Cal.Rptr. 204, 693 P.2d 789, italics added.)[3] The fact that Proposition 57 makes it more difficult to prosecute minors for specific crimes in adult court, reflects a determination by the voters that minors committing these crimes were, in some instances, punished too severely. (See Pineda , supra , at p. 483, 222 Cal.Rptr.3d 269, italics added ["the voters ... determined criminal punishment for juvenile offenders may be too severe in some cases, namely, those where a judge declines to order the transfer of an offender to a court of criminal jurisdiction-an adjudicatory forum in which there is a greater focus on punishment instead of rehabilitation and greater latitude to impose substantially longer custodial sentences"].) The voters' underlying determination that some minors were erstwhile punished too severely, leads to the "inevitable inference" that the voters intended to extend the opportunity to obtain a rehabilitative disposition under Proposition 57 as broadly as possible. ( Estrada , supra, 63 Cal.2d at p. 745, 48 Cal.Rptr. 172, 408 P.2d 948 ; see Conley, supra , 63 Cal.4th at p. 656, 203 Cal.Rptr.3d 622, 373 P.3d 435 [the Estrada rule creates a "presumption about legislative intent" with regard to the retroactivity of the amendment at issue].)
Furthermore, the voters approved Proposition 57 in the midst of a "sea change" in "penology regarding the relative culpability and rehabilitation possibilities for juvenile offenders." ( People v. Vela (2017) 11 Cal.App.5th 68, 75, 218 Cal.Rptr.3d 1, review granted Jul. 12, 2017, S242298 ( Vela ).) Courts and legislatures have acted decisively, in recent years, to limit application of the harshest punishments to minors. (See, e.g., Graham v. Florida (2010) 560 U.S. 48, 67, 130 S.Ct. 2011, 176 L.Ed.2d 825 [barring LWOP sentences for minors convicted of nonhomicide offenses]; Miller v. Alabama (2012) 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 [barring mandatory LWOP sentences for minors convicted of homicide offenses and requiring *639 consideration of youth-related factors as mitigation at sentencing]; Sen. Bill No. 260 (2013-2014 Reg. Sess.) adding § 3051 to the Penal Code [§ 3051 recognizes the "diminished culpability of juveniles" and provides for mandatory "youth offender parole hearings" for eligible juvenile defendants].) The fact that Proposition 57 was enacted at a time of increased recognition of the "[diminished] culpability and [unique] rehabilitation possibilities" of minors, supports the inference that the voters had determined that the specific crimes at issue were sometimes punished too severely in the case of minors. ( Vela , supra , at p. 75, 218 Cal.Rptr.3d 1.)
In light of Proposition 57's emphasis on rehabilitative dispositions for minors and its potential ameliorative effects on punishment for past criminal conduct, it warrants application of the Estrada exception, whereas the statute *493 at issue in Brown , correctly, did not.[4] (See People v. Francis (1969) 71 Cal.2d 66, 79, 75 Cal.Rptr. 199, 450 P.2d 591 [a potentially favorable amendment, in terms of the discretionary punishment faced by a defendant, is subject to the Estrada rule]; People v. Figueroa (1993) 20 Cal.App.4th 65, 69-70, 24 Cal.Rptr.2d 368 [accord].) I therefore disagree with the majority's view that Proposition 57 is inapplicable to cases that were pending final judgment on its effective date.
The majority posits that applying Proposition 57 retroactively would lead to "absurd results," in that even a hypothetical minor convicted of, and sentenced for, "special circumstance murder" in adult court, would thereby be entitled to a conditional remand for a fitness hearing and the opportunity for a rehabilitative disposition if the judgment in his case were not yet final. (Maj. opn., ante , at p. ----.) The majority's concern about "absurd results" is belied by Proposition 57's stated goal: to facilitate the rehabilitation of minors who have committed the most serious crimes. In light of Proposition 57's emphasis on rehabilitation, extending the opportunity to obtain a rehabilitative outcome as broadly as possible is far from an "absurd result." On the contrary, it gives effect to the voters' determination that specific crimes, in some instances, previously were punished too severely in the case of minors.
In support of its holding that Proposition 57 is not retroactive, the majority next contrasts Proposition 57's amendments relating to juveniles with a separate provision relating to parole eligibility. (Maj. opn., ante , at p. ----.) Specifically, the majority states that the "portions of Proposition 57 applicable only to juvenile offenders contain no express retroactivity provision" but "the provisions relating to eligibility for parole consideration" are made "expressly" retroactive "by making them applicable to '[a]ny person convicted ... and sentenced.' " (Maj. opn., ante , at p. ----.) The majority's assertion is puzzling because the provision concerning parole eligibility does not contain any "express" indication of retroactivity. The provision states: "Any person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense." (Voter Information Guide, Gen. Elec. (Nov. 8, 2016) text of Prop. 57, § 32, p. 141.) This language *640 simply reflects the nature of parole, specifically the fact that, in order to be eligible for parole consideration, a person must first be "convicted ... and sentenced." The majority's suggestion that this language "expressly" renders the provision retroactive is misleading. *494 Finally, the majority believes that the fact that Proposition 57 "mandates that any motion to transfer the minor from juvenile court to criminal court 'must be made prior to the attachment of jeopardy,' " suggests an intent for Proposition 57 to apply prospectively only. (Maj. opn., ante , at p. ----, italics omitted.) However, a conditional reversal and remand of a pending case for a fitness hearing under Proposition 57-as the Vela court ordered in that matter-obviates any concerns about the attachment of jeopardy. Assuming it is a foregone conclusion that the prosecution would file a motion for a fitness hearing on remand, "[r]eversal of the judgment effectively operates to vitiate the prior attachment of jeopardy." ( Pineda , supra , 14 Cal.App.5th at p. 483, fn. 10, 222 Cal.Rptr.3d 269 ; see Juan G . v. Superior Court (2012) 209 Cal.App.4th 1480, 1494, 147 Cal.Rptr.3d 816 ["voters are presumed to have been aware of existing law at the time an initiative was enacted"].) Accordingly, I see no impediment to applying Proposition 57 retroactively to this case.
Pivoting to the specific facts at issue here, it appears that retroactive application of Proposition 57 may well result in a rehabilitative disposition for Brewer. As the majority notes, this matter was initiated in juvenile court and the juvenile court subsequently conducted a fitness hearing under the prior law. Applying a presumption of unfitness against Brewer, pursuant to former section 707, subdivision (c), the juvenile court concluded that Brewer was unfit for treatment under the juvenile court law and referred the case for prosecution in adult court. (See Rene C. v. Superior Court (2006) 138 Cal.App.4th 1, 10, 41 Cal.Rptr.3d 71 ( Rene C .) [Under former § 707, subd. (c), "the minor who is presumed to be unfit has the burden of rebutting the presumption by a preponderance of the evidence."].)
More specifically, at Brewer's initial fitness hearing, the court evaluated his fitness under the five factors specified in former section 707, subdivision (c).[5] It was undisputed that Brewer had limited or no prior delinquency history, had not been subject to prior attempts at rehabilitation under the jurisdiction of the juvenile court, and could be rehabilitated within the timeframe applicable to a juvenile disposition. The court accordingly found Brewer fit under these three factors. In relation to the remaining two factors, namely, the minor's degree of criminal sophistication, and the circumstances and gravity of the alleged offenses, the court narrowly found Brewer to be unfit, after applying a presumption of unfitness in making its determination. The court *495 observed, as to both the latter factors, that making the requisite determination was "difficult," in light of "evidence of mitigation" pertaining to Brewer's "lack of impulse control or lack *641 of judgment."[6] (See former § 707, subd. (c)(1)(b) & (5)(B) ; Rene C ., supra , 138 Cal.App.4th at p. 12, 41 Cal.Rptr.3d 71.) Further, with regard to the factor of criminal sophistication, the court noted that while the offense reflected "a degree of criminal sophistication," it was "clearly not one of great criminal sophistication." The court ultimately concluded, based on its findings under two of the five applicable factors, that Brewer had not overcome the presumption of unfitness under section 707, subdivision (c), and referred the matter for prosecution in adult court.
With the repeal of former section 707, subdivision (c) by Proposition 57, any presumption of unfitness is erased, the burden of proving unfitness rests with the prosecution, and the court has more flexibility in making the ultimate determination of fitness or unfitness.[7] As discussed above, in comparison with the prior law, these changes militate in the affected minor's favor. In Brewer's case, the question of fitness or unfitness was a close one even under the less-favorable prior law, making it distinctly possible that, at any new fitness hearing under the amended law, the juvenile court would reverse its earlier determination.
In sum, I disagree with the majority's view that Proposition 57 is inapplicable to cases that were pending final judgment on its effective date. As in Vela , I would conditionally reverse the instant judgment in order to permit the juvenile court to conduct a new fitness hearing pursuant to sections 602 and 707, as amended by Proposition 57. Were the trial court to find that Brewer is unfit for a juvenile adjudication, the judgment would be reinstated. If, on the other hand, the juvenile court were to find that it would not have transferred Brewer to adult court in the first instance, his conviction and enhancements would be deemed juvenile adjudications and the juvenile court would impose an appropriate disposition under juvenile law. (See Vela , 11 Cal.App.5th at pp. 81-82, 218 Cal.Rptr.3d 1.)

Unless otherwise specified, references to this enactment are to those portions of the Act applicable only to juvenile offenders.

See footnote *, ante.

See footnote *, ante.

Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

At the time of defendant's offenses, former subdivision (b)(2)(E) of section 602 mandated prosecution in criminal (adult) court of juveniles 14 years of age or older who were alleged to have committed, inter alia, forcible sexual penetration (Pen. Code, § 289, subd. (a) ), where it was alleged the minor personally committed the offense and where one of the circumstances enumerated in the One Strike law (Pen Code, § 667.61, subds. (d), (e) ) was also alleged.

Section 602 now states: "Except as provided in Section 707, any person who is under 18 years of age when he or she violates any law of this state ..., is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court."
Section 707 now provides, in pertinent part: "(a)(1) In any case in which a minor is alleged to be a person described in Section 602 by reason of the violation, when he or she was 16 years of age or older, of any felony criminal statute ..., the district attorney ... may make a motion to transfer the minor from juvenile court to a court of criminal jurisdiction. The motion must be made prior to the attachment of jeopardy. Upon such motion, the juvenile court shall order the probation officer to submit a report on the behavioral patterns and social history of the minor. ... [¶] (2) Following submission and consideration of the report, and of any other relevant evidence that the petitioner or the minor may wish to submit, the juvenile court shall decide whether the minor should be transferred to a court of criminal jurisdiction. In making its decision, the court shall consider [certain specified] criteria ...." Subdivision (b) of section 707 extends subdivision (a) of the statute to any minor who allegedly committed a specified offense when he or she was 14 or 15 years of age.

The voter information guide is available at < http://voterguide.sos.ca.gov/en/ propositions/57/> (as of Nov. 17, 2017).

We are not here faced with, and express no opinion concerning, the situation of a minor who was charged in adult court but not yet tried at the time the Act went into effect. (See People v. Superior Court (Lara)(2017) 9 Cal.App.5th 753, 758, 773-778, 215 Cal.Rptr.3d 456, review granted May 17, 2017, S241231; see also Tapia v. Superior Court(1991) 53 Cal.3d 282, 288, 279 Cal.Rptr. 592, 807 P.2d 434.)

This question is pending review before the state Supreme Court in numerous cases, including People v. Superior Court (Walker)(2017) 12 Cal.App.5th 687, 220 Cal.Rptr.3d 1, review granted September 13, 2017, S243072; People v. Marquez, supra, 11 Cal.App.5th 816, 217 Cal.Rptr.3d 814, rev.gr.; People v. Vela(2017) 11 Cal.App.5th 68, 218 Cal.Rptr.3d 1, review granted July 12, 2017, S242298; People v. Mendoza(2017) 10 Cal.App.5th 327, 216 Cal.Rptr.3d 361, review granted July 12, 2017, S241647; and People v. Cervantes(2017) 9 Cal.App.5th 569, 215 Cal.Rptr.3d 174, review granted May 17, 2017, S241323.

"Although parole constitutes a distinct phase from the underlying prison sentence, a period of parole following a prison term has generally been acknowledged as a form of punishment." (People v. Nuckles(2013) 56 Cal.4th 601, 609, 155 Cal.Rptr.3d 374, 298 P.3d 867.)

In Tapia v. Superior Court, supra, 53 Cal.3d 282, 279 Cal.Rptr. 592, 807 P.2d 434, the California Supreme Court addressed application of the provisions of Proposition 115. In pertinent part, it held that provisions adding intent requirements to certain special circumstances permissibly could be applied to trials of crimes committed before the proposition's operative date, because, although they changed the legal consequences of a defendant's criminal conduct, they did so in a way that benefited defendants. (Tapia, supra, at pp. 300-301, 279 Cal.Rptr. 592, 807 P.2d 434.) The Tapia opinion says nothing about application of the new provisions to cases in which trial was already held.

Subsequent statutory references are to the Welfare and Institutions Code unless otherwise specified.

The Voter Information Guide is available at < http://www.sos.ca.gov/elections/voting-resources/voter-information-guides/> [as of Nov. 17, 2017].

See People v. Macias(1997) 16 Cal.4th 739, 750, 66 Cal.Rptr.2d 659, 941 P.2d 838 ; Marcus W. v. Superior Court(2002) 98 Cal.App.4th 36, 41, 118 Cal.Rptr.2d 919.

It bears mention that when our Supreme Court recently considered the question of retroactivity of Proposition 36 in Conley, it did not hold that application of the Estrada rule was strictly limited to situations where an amendatory statute reduces the penalty for a particular crime, but rather analyzed the application of the Estrada rule to Proposition 36 on other grounds. (See Conley, supra, 63 Cal.4th 646, 203 Cal.Rptr.3d 622, 373 P.3d 435.)

The five factors were: the minor's prior delinquent history; the success of prior attempts to rehabilitate the minor; the minor's ability to be rehabilitated before the juvenile court's jurisdiction expires; the minor's degree of criminal sophistication; and the circumstances and gravity of the crimes alleged against the minor. (See Rene C., supra, 138 Cal.App.4th at p. 10, 41 Cal.Rptr.3d 71.) Further, under former section 707, subdivision (c), in order to qualify for juvenile court treatment, the court had to find that the minor was "fit" under each of the five factors. (Rene C., supra, at p. 10, 41 Cal.Rptr.3d 71.) The court was also permitted to consider "extenuating or mitigating circumstances in evaluating each of the [five] criteria." (Former § 707, subd. (c).)

As the court acknowledged, the defense had presented relatively strong mitigating evidence related to Brewer's mental health at the time. Brewer was tentatively diagnosed with bipolar disorder and, for reasons outside his control, had been off his antipsychotic medication (Risperdal ) for quite some time. Brewer's expert witness, a psychologist, opined that, "had [Brewer] been on the medication, [it] is doubtful [the crime] would ever have occurred."

Former section 707, subdivision (c) specified that, with respect to certain offenses, in order to find a minor fit for juvenile court jurisdiction, the court had to find him fit under each of the five applicable factors.