Filed 3/17/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re E.P., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B319738 (Super. Ct. No. 21JV00138) (Santa Barbara County) |
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>E.P.,<br><br>   Defendant and Appellant. | |

The Greek philosopher Heraclitus observed that "nothing endures but change." The California legislature must have had Heraclitus in mind when it changed a variety of laws in the penal and juvenile codes.

Here we consider changes in the law concerning fitness hearings to determine whether offenses committed by juveniles belong in juvenile or adult court.

A juvenile wardship petition alleged against E.P. alleged two counts of murder (Pen. Code, § 187, subd. (a)), two counts of

attempted murder (*id*., §§ 664, 187, subd. (a)) and one count of street terrorism (*id*., § 186.22, subd. (a).)

The juvenile court held a fitness hearing pursuant to Welfare and Institutions Code[1] section 707. The court ordered the case transferred to criminal court. Since the hearing, section 707 has been amended. (Stats. 2022, ch. 330, § 1.) We reverse and remand for a new fitness hearing pursuant to section 707 as amended. The Attorney General agrees.

FACTS

E.P. was 17 years old at the time of the incident. He was a member of the Carpas street gang. The gang's territory is in Carpinteria. Two of E.P.'s family members, Angel V., and Oscar T., are also members of the Carpas gang. E.P.'s uncle, who lives across the street from E.P., is a Carpas gang leader.

*Assault of March 6, 2020*

On March 6, 2020, members of the Eastside Santa Barbara street gang (Eastside gang) assaulted members of the Carpas gang at a market in Goleta. The Eastside gang used blunt instruments in the assault.

Later that night Eastside gang members, using the same blunt instruments, chased some Carpas gang members into a market in Carpinteria. Video from the market showed E.P. as one of the victims and R.R. as one of the assailants.

*Shooting on January 3, 2021*

On the evening of January 3, 2021, M.S. was with three other Eastside gang members, including R.R., on Liberty Street in Eastside territory. M.S. saw a blue jeep go by. The driver was

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

wearing a cap with a "C" on it, indicating membership in the Carpas gang.

Shortly thereafter, M.S. noticed two men approaching on foot from the direction where the jeep had gone. Both men were wearing caps with a "C" on them. One of the men produced a gun and shot four Eastside members, killing two and wounding M.S. and R.R.

A woman walking on Liberty Street heard gunshots and saw two men run by her. One of the men was holding a gun "that got bigger toward the bottom." The description matched a gun with an extended magazine.

*Investigation*

The police determined that Angel V. owned the blue jeep used in the shooting. They also recovered the gun used in the shooting and traced it back to Angel V. Angel V.'s social media showed him holding what appeared to be the gun used in the shooting with an extended magazine. A gun with an extended magazine would not be easy to conceal.

E.P.'s social media showed him in gang attire. It also showed him wearing a bullet proof vest. E.P.'s iCloud account contained the following verse: "This, my consequences as a young hog, I was right there when the neighborhood call, through the gun play and the violent fist for all. Even with a black eye, boy had to stand tall." A Snapchat image saved on E.P.'s cell phone said, "Shout out my shooters."

*E.P.'s Interview*

Detective Andre Miller interviewed E.P. after he was arrested. E.P. initially stated that he was at home on the evening of January 3, 2021. He said Angel V. and Oscar T. were

also home.  E.P. repeatedly denied he was involved in the shooting.

Later E.P. admitted that he drove the jeep on January 3, 2021, and that Angel V. and Oscar T. were with him.  They told him to drive in circles, but they did not tell him what was about to happen.  He saw a group of Eastsiders as he drove down Liberty Street.  He expected fighting but he did not know Angel V. and Oscar T.  had a gun with them.  He admitted that he knew Angel V. owned guns.  He claimed he learned of the shooting when someone told him after he got home.

E.P. said he did things for his family out of loyalty.  He said if he got into a situation, the first person he would call is Angel V., the second would be his uncle.

*Ruling*

E.P. did not request that the juvenile court find whether the prosecution established a prima facie case.

In ruling that E.P. was not fit to be treated under the juvenile law, the court considered the five factors listed in former section 707, subdivision (a)(3)(A)-(E).

The juvenile court found:

First, E.P. exhibited criminal sophistication.  The offenses involved planning and purpose.  E.P. was almost 18 years old at the time.  He is intellectually mature and thinks before he acts.  He was not under the influence of drugs.

Second, E.P. can be rehabilitated prior to the expiration of the juvenile court's jurisdiction.  E.P. is mature and is at the end of the intellectual scale.  Given the time remaining, he can be rehabilitated.

Third, E.P. has no serious delinquent history.  His delinquent history is limited to some acting out at school.

4

Fourth, E.P. has not needed previous attempts at rehabilitation.

Fifth, as to the gravity of the offense alleged in the petition, every murder is a serious offense. Two young lives were ended, and others were injured. The court stated: "I don't believe [E.P.'s] statement that he did not know what was going to happen. What do you assume is going to happen if you drive two people to a rival gang's central location[?]"

The juvenile court stated that some factors weigh in favor of retaining juvenile court jurisdiction and other factors weigh in favor of a transfer to criminal court. Given the totality of the circumstances, however, the court concluded the matter should be transferred to criminal court.

DISCUSSION

I.

*Prima Facie Case*

E.P. contends the prosecution did not establish a prima facie case of murder or attempted murder.

California Rules of Court, rule 5.766 governs the transfer of jurisdiction from juvenile to criminal court. Subdivision (c) of the rule states: "On the child's motion, the court must determine whether a prima facie showing has been made that the offense alleged is an offense that makes the child subject to transfer . . . ."

Here E.P. has forfeited the claim because he did not make the required motion. E.P. argues that his counsel provided ineffective assistance by failing to make the motion. But the juvenile court's comments made it clear that it believed the prosecution established a prima facie case. E.P. admitted he drove Angel V. and Oscar T. into the Eastside gang's territory.

5

The only question was whether he knew that there would be a shooting.  E.P. claimed he thought there would only be a fight.  The juvenile court stated it did not believe him.  To prevail on a claim of ineffective assistance of counsel the defendant must show, but for counsel's error, there is a reasonable probability the defendant would have obtained a more favorable result.  (*In re Wilson* (1992) 3 Cal.4th 945, 950.)  E.P. has failed to make that showing.

In any event, there is sufficient evidence of a prima facie case for murder.  The standard is reasonable and probable cause.  (*Rene C. v. Superior Court* (2006) 138 Cal.App.4th 1, 4, fn. 2.)  To meet the standard, there is no need to prove guilt; a """strong suspicion of . . . guilt"""" is all that is required.  (*Ibid*.)  That standard has been more than met here.

First, E.P. knew he was driving Angel V. and Oscar T. into Eastside territory to confront members of the gang.  E.P., Angel V. and Oscar T. were more than members of the same gang, they were members of the same family.  E.P. was personally humiliated in the assault on March 6, 2020, when Eastside gang members chased Carpas gang members into a market.  There is every reason to believe that E.P. knew from the beginning that Angel V. and Oscar T. intended to shoot Eastside gang members.

Second, E.P. drove by four Eastside gang members including R.R., who had been involved in chasing E.P. into a market in Carpinteria.  When E.P. dropped off Angel V. and Oscar T., he would not expect that two Carpas gang members were going to take on four Eastside gang members in Eastside territory using only their fists.  E.P. knew Angel V. owned guns.

6

Third, shortly after the shooting, a woman saw Angel V. carrying a handgun with an extended clip. It is reasonable to conclude that such a gun would not be easy to conceal and that E.P. was aware that Angel V. was armed when they departed Carpinteria for Eastside territory.

Finally, E.P. bragged in verse about his participation in the shooting. He said, "I was right there when the neighborhood call, through the gun play and the violent fist for all." It is reasonable to conclude that E.P. was not bragging about being an unwitting dupe in the shooting of rival gang members.

## II.

### Transfer to Criminal Court
### Prior Statute

At the time of the fitness hearing, section 707 required the prosecution to prove by a preponderance of the evidence that the case should be transferred to a criminal court. (Cal. Rules of Court, rule 5.770(a).) In making that decision the juvenile court was required to consider five criteria: 1) the degree of criminal sophistication, 2) whether the minor, can be rehabilitated prior to the expiration of the juvenile court's jurisdiction, 3) the minor's previous delinquent history, 4) the success of previous attempts by the juvenile court to rehabilitate the minor and 5) the circumstances and gravity of the offense alleged in the petition to have been committed by the minor. (Former § 707, subd. (a)(3)(A)-(E).) If the juvenile court ordered transfer, it was required to state the basis for its decision in the order (*Ibid*.) Here, in ordering transfer, the juvenile court determined that the degree of criminal sophistication and the circumstances and gravity of the alleged offenses outweigh positive findings on the other factors.

7

*Amended Statute*

Effective January 1, 2023, section 707, subdivision (a)(3) was amended in part as follows: "In order to find that the minor should be transferred to a court of criminal jurisdiction, the court shall find by clear and convincing evidence that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court. In making its decision, the court shall consider the criteria specified in subparagraphs (A) to (E), inclusive. If the court orders a transfer of jurisdiction, the court shall recite the basis for its decision in an order entered upon the minutes, which shall include the reasons supporting the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court." (Stats. 2022, ch. 330, § 1.) The amendment changes section 707 in a number of ways.

First, in the previous version of section 707, the prosecution's burden was by a preponderance of the evidence. Under the amendment the prosecution's burden is increased to clear and convincing evidence.

Second, under the previous version whether the minor is amenable to rehabilitation while under the jurisdiction of the juvenile court was one of five factors for the court to consider in determining whether the case should be transferred to criminal court. The amendment states it as the ultimate question for the court to decide. Nevertheless, in deciding that question, the amendment requires the court to consider the same five factors listed in the previous version.

Finally, the previous version required that if the juvenile court orders a transfer, it shall recite the basis for its decision in the order. The amended statute requires the court to not only recite the basis for its decision, but also the reasons supporting

8

the court's finding that the minor is not amenable to rehabilitation while under the jurisdiction of the juvenile court.

The parties agree that because the case is not final, E.P. is entitled to the benefit of the amended statute. (*In re Estrada* (1965) 63 Cal.2d 740.) The parties disagree, however, on whether the matter should be remanded to the juvenile court with instructions to deny the transfer petition, or whether the prosecution is entitled to a new hearing on the question of transfer.

Under the amended statute the ultimate finding is whether the minor is amenable to rehabilitation while under the jurisdiction of the juvenile court. E.P. points out that the juvenile court found he is amenable to rehabilitation while under the jurisdiction of the juvenile court. He further points out that at the time of the shooting the prosecution's burden was only to a preponderance of the evidence.

But at the time of E.P.'s fitness hearing the amenability of the minor to rehabilitation was a factor separate from the other four factors, and the juvenile court treated it as such. The court cited only E.P.'s maturity and his intellect as favoring its finding of amenability.

The amended section 707 requires the juvenile court to consider all five factors together in determining whether the minor is amenable to rehabilitation. Under the amended statute, like the previous version, the court has the discretion to conclude that one or more of the five factors predominate so as to determine the result, even though some or all of the other factors might point to a different result. The prosecution is entitled to a new fitness hearing so that the court can determine, considering all five factors, whether E.P. is amenable to treatment. Nothing

in this opinion shall be construed to indicate how the court should rule.[2]

DISPOSITION

The matter is reversed and remanded for a new fitness hearing to be conducted pursuant to section 707 as amended.

CERTIFIED FOR PUBLICATION.

GILBERT, P. J.

We concur:

YEGAN, J.

BALTODANO, J.

---

[2] E.P.'s request for a prima facie hearing is denied.

Arthur A. Garcia, Judge

Superior Court County of Santa Barbara

_____

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael C. Keller and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.